UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | ) ) ) | MDL No. 2262 |
| This document relates to: | ) ) | Master File No. 1:11-md-2262-NRB |
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, v. | ) ) ) | ECF Case 13-cv-7394-NRB |
| CREDIT SUISSE GROUP AG; BARCLAYS BANK PLC; BARCLAYS CAPITAL INC.; LLOYDS BANKING GROUP PLC; WESTLB AG; WESTDEUTSCHE IMMOBILIENBANK AG; UBS AG; THE ROYAL BANK OF SCOTLAND GROUP PLC; ROYAL BANK OF SCOTLAND PLC; COÖPERATIEVE CENTRALE RAIFFEISEN BOERENLEENBANK B.A.; THE NORINCHUKIN BANK; THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.; HBOS PLC; SOCIÉTÉ GÉNÉRALE S.A; ROYAL BANK OF CANADA; BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; CITIGROUP, INC.; CITIBANK, N.A.; CITIGROUP FINANCIAL PRODUCTS; DEUTSCHE BANK AG; CITI SWAPCO INC.; HSBC HOLDINGS PLC; HSBC BANK USA, N.A.; JPMORGAN CHASE & CO.; AND JPMORGAN CHASE BANK N.A. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXCLUSION FROM CLASS SETTLEMENTS** |
| Defendants. | | |

## INTRODUCTION

The National Credit Union Administration Board ("NCUA"), in its capacity as liquidating agent for U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union (the "Credit Unions"), should be excluded from three class-action settlements (the "Settlements") recently approved by the Court against Barclays Bank plc ("Barclays"); Citibank, N.A. and Citigroup Inc. (collectively, "Citi"); HSBC Bank plc ("HSBC"); and Deutsche Bank Aktiengesellschaft ("Deutsche Bank," and collectively with Barclays, Citi, and HSBC, the "Settling Defendants") and a litigation class (the "Litigation Class") certified by the Court against Bank of America, N.A. and JPMorgan Chase Bank, N.A. (the "Litigating Defendants," and with Settling Defendants, the "Defendants").[1]

NCUA affirmatively expressed its intent to opt out of the Settlements and the Litigation Class prior to expiration of the opt-out periods. On September 23, 2013, NCUA filed its original complaint that included individual claims against the Defendants. Since that time, NCUA has actively litigated its individual claims against the Defendants. Among other things, during the opt-out periods NCUA noticed an interlocutory appeal, amended its protective complaint, and submitted briefing in support of its motion to amend its original complaint. That conduct unambiguously reflected NCUA's desire to be excluded from any class proceedings and to pursue individual actions as its sole remedy. This "reasonable indication of a desire to opt out . . . suffice[d]" to exclude NCUA from the Settlements and the Litigation Class. *See*

---

[1] The Settlements relate to OTC claims against the Settling Defendants. *See* Mem., Order, and Judgment, *Mayor & City Council of Baltimore v. Credit Suisse Group AG*, 11-cv-5450-NRB (S.D.N.Y. Aug. 1, 2018), ECF No. 443 (Barclays and Citi); Final Judgment and Order, *Mayor & City Council of Baltimore v. Credit Suisse Group AG*, 11-cv-5450-NRB (S.D.N.Y. Oct. 25, 2018), ECF No. 494 (Deutsche Bank and HSBC). The Litigation Class relates to OTC claims against the Litigating Defendants. *See* ECF No. 2452 at 360.

*Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982).  NCUA did not need to undertake the additional formality of sending an opt-out letter.

Even if NCUA's conduct was not sufficient to exclude itself from the Settlements and the Litigation Class, this Court should exercise its discretion to allow NCUA to opt-out of the Settlements and the Litigation Class after expiration of the opt-out periods.  The Defendants have not – and cannot – articulate any cognizable prejudice that would result from allowing NCUA to opt out.  The only effect of the Court exercising its discretion would be to allow NCUA to continue pursuing claims that it was already pursuing.

Moreover, NCUA's failure to submit a formal opt-out was done in good faith.  NCUA has pursued many claims against financial institutions whose conduct contributed to the failure of the Credit Unions.  While pursuing those claims, NCUA has received mailed notice of class-action settlements through its Asset Management and Assistance Center ("AMAC"); AMAC has analyzed whether participation in those settlements is in NCUA's best interests; and NCUA has then decided whether to participate in the class-action settlement.  Unfortunately, that process did not work for these Settlements or the Litigation Class because NCUA (including AMAC) did not receive written (or other) notice of the Settlements or the Litigation Class – despite the notice plan requiring mailed notice and despite NCUA regularly receiving written notice with respect to other class-action settlements.  To be sure, NCUA counsel received ECF notices of the Settlements and the Litigation Class.  But that fact does not warrant refusing to allow NCUA to opt-out because the Court retains discretion to extend opt-out deadlines even when the failure to meet the deadline was within counsel's control.  *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 928 F. Supp. 2d 805, 809 (S.D.N.Y. 2013).

3

## BACKGROUND

1.      On September 23, 2013, NCUA filed a complaint in the District of Kansas asserting LIBOR-related claims on behalf of the five liquidated Credit Unions. *See NCUA v. Credit Suisse Grp. AG*, No. 13-cv-2497 (D. Kan. filed Sept. 23, 2013). That Complaint included claims against each of the Defendants. NCUA has actively litigated those claims over several years. Among other things, NCUA has opposed motions to dismiss (including on issues specific to NCUA), *see* ECF Nos. 871, 875, 877, 883, 886, 887, 893, 1303, 1524; sought discovery from defendants (including Defendants), *see*, *e.g.*, ECF Nos. 1242, 1349, 1410, 1433, 1963, 1972, 1979, 1987, 2508, 2538; filed a protective complaint in the event the Court determines venue or personal jurisdiction is lacking in Kansas, *see NCUA v. Credit Suisse Grp. AG*, No. 15-cv-2060 (S.D.N.Y. filed Mar. 19, 2015); appealed certain of this Court's rulings, *see* ECF Nos. 1054, 2152; and moved to amend its complaints or done so as of right, *see* ECF Nos. 662, 700, 2544, 2545, 2581, 2666, 2667.

The Settling Defendants entered into the Settlements to resolve claims against them in the OTC Actions. The Settlement classes included all persons "that purchased in the United States, directly from a Defendant (or a Defendant's subsidiaries or affiliates), a U.S. Dollar LIBOR-Based Instrument and that owned the U.S. Dollar LIBOR-Based Instrument any time during the period August 2007 through May 2010." *See* ECF No. 2655 at 4; ECF No. 2746 at 5. In this regard, "Defendants" included the defendants named in the OTC Action, and "U.S. Dollar LIBOR-Based Instrument" included various types of swaps and similar instruments "that include[] any term, provision, obligation, or right to be paid by or to receive interest from a Defendant (or its subsidiaries or affiliates) based upon the U.S. Dollar LIBOR rate." *See* ECF No. 2655 at 1-2 n.2, 4-5 n.6; ECF No. 2746 at 2-3 n.3, 6 n.7. The Litigation Class was defined

the same. *See* ECF No. 2452 at 298. Neither the Settlement classes nor the Litigation Class included Constitution because Constitution did not purchase U.S. Dollar LIBOR-Based Instruments directly from any Defendant. *See* ECF No. 2581-1 at Apps. Q-R.

The proposed notice programs for each of the Settlements and the Litigation Class stated that notice would be mailed to lists of counterparties (compiled by Defendants) and institutional investors. *See* ECF No. 1927 at 4-5 (Barclays); ECF No. 2252 at 4-5 (Citi); ECF No. 2516 at 6 (Deutsche Bank and HSBC). These lists purportedly contained tens of thousands of counterparties, which would be identified from "an extremely large amount of trade data" turned over by Defendants. *See* ECF No. 1927 at 4-5; ECF No. 2252 at 4-5; ECF No. 2516 at 6. The Court's approvals of these plans required that notice be mailed to potential class members "for which Defendants have provided address information." *See* ECF No. 1948 (Barclays); ECF No. 2290 (Citi); ECF No. 2579 (Deutsche Bank and HSBC). The Court's electronic filing system was not one of the approved mechanisms for providing notice to potential class members. *See* ECF Nos. 1948, 2290, 2579.[2]

    **2.**    AMAC is "responsible for managing involuntary liquidations" (including "achieving . . . recoveries") for "federally insured credit unions placed into involuntary liquidation" like the Credit Unions at issue. 12 C.F.R. § 790.2(b)(3). Subsumed within AMAC's responsibility for managing liquidations is the responsibility to decide whether to participate in class actions or proposed class-action settlements. *See* Decl. of Conrad Wirries ¶ 3 (attached as Ex. 1) ("Wirries Decl."). In prior proposed class-action settlements concerning

---

[2] For Barclays, the notice was to be mailed by July 24, 2017, and class members had until October 9, 2017 to opt out. *See* ECF No. 1948 at 2-3. For Citi, the notice was to be mailed by October 30, 2017, and class members had until January 2, 2018, to opt out. *See* ECF No. 2290 at 2-3. For Deutsche Bank, HSBC, and the Litigating Defendants, the notice was to be mailed by July 23, 2018, and class members had until September 28, 2018 to opt out. *See* ECF No. 2579 at 2-3.

financial products relating to the Credit Unions – including LIBOR claims – AMAC has received written notice of the proposed settlements by mail. *See id.* ¶ 4. AMAC has analyzed the proposed settlements and then decided whether to opt out or to submit a claim to the settlement administrator. *Id.* ¶ 5.

NCUA (including AMAC) did not receive mailed (or other) notice of the Settlements or Litigation Class. *See id.* ¶¶ 6-7. In particular, AMAC searched its mail logging system and email archives for any class-action notices relating to the Defendants and found none. *See id.* ¶ 7. Moreover, counsel for OTC Plaintiffs have provided NCUA with mailing information confirming that NCUA was not mailed notice relating to the Settlements or the Litigation Class.[3] *See* Ex. 2.[4] As a result, AMAC did not analyze whether to participate in the Settlements or the Litigation Class, and NCUA did not submit a letter to the claims administrator to formally opt-out of the Settlements or Litigation Class prior to the opt-out dates.

3.  NCUA first learned of Settling Defendants' belief that NCUA had not adequately opted out of Settlements on October 30, 2018, when counsel for Barclays contacted NCUA's counsel regarding the Barclays Settlement. Previously, Barclays and Citi had opposed NCUA's motion to amend its complaint in June 2018 without mentioning the Settlements or raising them as a basis to deny the motion. *See* ECF No. 2625. Five business days after receiving notice of Barclays's position, on November 6, 2018, NCUA contacted the claims administrator for the

---

[3] The addressee list did include an address associated with Catalyst Corporate Credit Union, the successor to one of the Credit Unions at issue in the Citi Settlement (Southwest Corporate Credit Union). *See* Ex. 2. However, NCUA has confirmed that this notice sent to Catalyst was not received by AMAC since it does not appear in its mail logging system or email archives. Wirries Decl. ¶ 7.

[4] NCUA is in the process of independently verifying with the claims administrator the information provided in Ex. 2. To the extent the claims administrator provides this verification, we can submit it for the Court's consideration.

Settlements by phone and on November 8 by letter to confirm that NCUA was not participating in the Settlements. *See* Ex. 3 (Nov. 8, 2018 Letter from M. Huppert). The claims administrator confirmed by phone on November 6 that NCUA was not participating in the Settlements. On November 15, 2018, the claims administrator confirmed by phone to NCUA counsel that it had received and processed NCUA's written request for exclusion and that it had informed the parties to the Settlements.

NCUA submitted a pre-motion conference letter on December 20, 2018. *See* ECF 2778. The Court informed NCUA's counsel that it could file this motion at the hearing held on January 29, 2019.

## ARGUMENT

### I. NCUA Effectively Opted Out of the Settlements and the Litigation Class

An absent class member's request to be excluded from a settlement or litigation class need not satisfy the specific procedures described in the notice, nor need such a request even be "explicit." *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974).[5] Rather "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." *Id.*; *see also Plummer*, 668 F.2d at 657 n.2 ("Any reasonable indication of a desire to opt out should suffice.").

---

[5] Tenth Circuit law applies to whether NCUA's individual OTC claims—filed in the District of Kansas—are part of the class Settlements. *See In re Methly Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 435, 440 (S.D.N.Y. 2007) (law of transferor court applies to questions of class certification since these requirements are "inherently enmeshed with considerations of the trial"). NCUA cites to both Tenth and Second Circuit law for ease of reference, and this motion should be granted regardless of whether Tenth Circuit or Second Circuit law is applied.

NCUA's active litigation of individual claims against the Defendants during the opt-out periods was "an effective expression" of NCUA's desire to opt out of the Settlements and the Litigation Class. *Four Seasons*, 493 F.2d at 1291. In particular, during the opt-out period for the Barclays and Deutsche Bank/HSBC Settlements and the Litigation Class, NCUA noticed an interlocutory appeal, corresponded with the Court regarding discovery issues and other matters, amended its protective complaint, and submitted briefing in support of its motion to amend its original complaint. *See* ECF No. 1963 (June 9, 2017); ECF No. 1972 (June 14, 2017); ECF No. 1979 (June 15, 2017); ECF No. 1980 (June 15, 2017); ECF No. 1987 (June 21, 2017); ECF No. 2152 (July 31, 2017); ECF No. 2263 (Sept. 14, 2017); ECF No. 2581 (June 22, 2018); ECF No. 2641 (July 25, 2018); ECF Nos. 2666-2667 (Aug. 9, 2018). All of those actions effectively expressed NCUA's desire to be excluded from the Settlements and the Litigation Class and instead to litigate individual actions against the Defendants. *See Butler v. Fairbanks Capital*, 2005 WL 5108537, at *6 (D.D.C. Jan. 3, 2005) ("[T]he plaintiff reasonably indicated her intent to be excluded from the class action suit by filing independent litigation addressing the same claims as the class action."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 216 (N.D. Ill. 1997) (holding that filing of individual claims was "sufficient to signify an intention to opt out"); *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 71 (N.D. Cal. 1976) ("[I]t seems clear that institution of litigation, with its concomitant personal service of a complaint on a responsible officer of a corporation, constitutes an effective—indeed, strident—expression of a desire not to acquiesce in an impending class settlement.").

Notably, NCUA does not rely upon the mere "pendency of an individual action." *See, e.g., In re Prudential Sec., Inc. P'ship Litig.*, 164 F.R.D. 362, 370 (S.D.N.Y. 1996); *Supermarkets Gen. Corp. v. Grinnell Corp.*, 59 F.R.D. 512, 513 (S.D.N.Y. 1973) (mere

"existence of [individual] action did not automatically exclude plaintiffs as potential members of the class"). NCUA relies upon the active steps it took to pursue its individual claims during the opt-out periods, thereby providing a "reasonable indication," and "effective expression" of its desire to litigate its individual claims rather than participate in the Settlements or the Litigation Class. *See Four Seasons*, 493 F.2d at 1291; *Plummer*, 668 F.2d at 657 n.2. Plaintiffs who have taken similar active litigation measures during an opt-out period have been found to have effectively opted out, despite not submitting a formal opt-out notice. *See Butler*, 2005 WL 5108537, at *6 (filing individual lawsuit during opt-out period "clearly demonstrated . . . [plaintiff's] intent to pursue this litigation as her sole remedy"); *Brand Name Prescription Drugs*, 171 F.R.D. at 216 (plaintiff's filing of individual action during opt-out period was "clearest evidence of a desire to pursue its own litigation" and "certainly evidence of an intent to pursue its remedies independently, rather than as part of the class"); *McCubbrey*, 71 F.R.D. at 71 (similar); *Bonner v. Texas City Indep. Sch. Dist.*, 305 F. Supp. 600 (S.D. Tex. 1969) (testimony at trial "express[ing] a firm desire not to become associated with [the class] action in any way" was "sufficient to constitute a request to be excluded").

Indeed, the Settling Defendants concede that NCUA "active[ly] participat[ed] in the MDL" during the opt-out periods. ECF No. 2779 at 4. They also do not contest that NCUA's conduct during the opt-out periods objectively manifested a desire to continue pursuing its individual actions. In fact, "no reasonable person could view [NCUA's] conduct as expressing a desire to participate in the proposed settlement[s]." *McCubbrey*, 71 F.R.D. at 71. Deeming NCUA, as Liquidating Agent for certain Credit Unions, not to have opted-out of the Settlements and the Litigation Class ignores the "considerable flexibility" that "is desirable in determining

9

what constitutes an effective expression of a class member's desire to exclude himself." *Four Seasons*, 493 F.2d at 1291.

Settling Defendants' attempts to distinguish *Butler*, *Brand Name Prescription Drugs*, and *McCubbrey* are unpersuasive. *See* ECF No. 2779 at 4 n.6. First, Settling Defendants claim that the class member in *Butler* is distinguishable because she "lacked actual notice of the settlements," ECF No. 2779 at 4 n.6, but the *Butler* court said no such thing. Rather, the court observed that the class member, like NCUA, "states that she never received [mailed] notice" of the settlement. *Butler*, 2005 WL 5108537 at *1. Second, Settling Defendants point out that the class member in *Brand Name Prescription Drugs* "attempted to formally opt out of the settlement," but the court relied upon the class member's litigation conduct, *not* its misguided attempt to mail its opt-out notice to the court rather than the claims administrator, as "evidence of a desire to pursue its own litigation." 171 F.R.D. at 216. Finally, Settling Defendants attempt to distinguish *McCubbrey* because the class member in that case actively litigated its case "only *after* receiving notice of the class settlements." ECF No. 2779 at 4 n.6. But that fact provides no distinction at all because what matters is whether the class member's actions objectively indicate a desire to pursue its own claims, *see Four Seasons*, 493 F.2d at 1291; *Plummer*, 668 F.2d at 657 n.2, not whether those actions were taken before or after receiving notice.

A.   **That Formal Opt Outs Were Not Submitted Was Excusable**

Even if the Court determines that NCUA has not effectively opted out of the Settlements or the Litigation Class, the Court retains the discretion to extend a class member's time for opting out after the deadline has expired "if the party failed to act because of excusable

neglect."[6] Fed. R. Civ. P. 6(b)(1)(B); *see Four Seasons*, 493 F.2d at 1290 (late opt-out permitted upon "finding of excusable neglect under Rule 6(b)(2)"); *Morris v. Affinity Health Plan, Inc.*, 928 F. Supp. 2d 805, 809 (S.D.N.Y. 2013); *see also* Fed. R. Civ. P. 23(d) (permitting Court to issue appropriate orders to manage a class action). That discretion "is at its greatest" in the context of "a case-management decision in a complex class action." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003).[7]

Excusable neglect "requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." *Four Seasons*, 493 F.3d at 1290. In exercising the discretion to permit a party to be excluded from a class-action settlement after the deadline, several factors should be considered:

> the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment.

*Burns v. Copley Pharm., Inc.*, 132 F.3d 42, at *3 (10th Cir. 1997) (unpublished) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994)); *see also Active Glass Corp. v. Architectural & Ornamental Iron Workers Local Union 580*, 899 F. Supp. 1228, 1230 (S.D.N.Y. 1995) (listing

---

[6] Moreover, as to the Litigation Class, the Court retains discretion to "refuse to approve a settlement" of that class's claims "unless [such a settlement] affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4). Of course, NCUA has already expressed its unambiguous intent to be excluded from the Litigation Class regardless of any future settlement, and thus the Court need not exercise its discretion under Rule 23(e)(4) as to NCUA, but that discretion further counsels in favor of permitting NCUA to opt out of the Litigation Class now.

[7] The Settling Defendants have contended, without citation to any authority, that this motion "should be viewed as a motion for relief from judgment under Rule 60(b)." ECF No. 2779 at 2. The Second Circuit, however, has held that motions like the present one should be treated as motions to extend the time for opting out of the class settlement and should be governed by Rule 6(b)(1)(B). *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011); *In re Painewebber Ltd. P'ship Litig.*, 147 F.3d 132, 135 (2d Cir. 1998).

other factors). More broadly, excusable neglect is an "elastic concept," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993), that "encompass[es] even those omissions caused by circumstances within the movant's control," *Morris*, 928 F. Supp. 2d at 809. Thus, deciding whether a party has established excusable neglect is an equitable inquiry that "requires a court to consider all relevant circumstances." *Id*. Each of these factors support enlarging the time period for NCUA to opt out.

*First*, NCUA acted in good faith by relying on an established process, whereby AMAC would review and process mailed notices of class-action settlements. Relying on individual mailed notice was a reasonable process because such notice is recognized as the best form of notice to be given to class members. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Notably, NCUA had relied on this same process without problem for prior class-action settlements that affected the Credit Unions. *See* Wirries Decl. ¶¶ 4-5. Indeed, the notice plans approved by the Court for the Settlements and the Litigation Class required notice to be mailed directly to class members like NCUA that were readily ascertainable from the Defendants' own business records. *See, e.g.*, *Burns*, 132 F.3d 42 (considering "the degree of compliance with the best practicable notice procedures" in evaluating whether to permit late opt-out). Here, because the Defendants did not provide any mailing address for NCUA or AMAC to the claims administrator, NCUA did not receive written notice of the Settlements, which caused the process that it had relied upon to break down. *See* Wirries Decl. ¶¶ 6-8; Ex. 2 (list of addressees generated from Defendants' business records). Courts have granted motions for late exclusion under similar circumstances. *See In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1995 WL 263879, at *6 (E.D. La. May 4, 1995) (granting motion for late exclusion: "Due

process in this instance required that the Class Notice relating to the [class member's] accounts be sent to the proper address.").

Moreover, although NCUA's counsel received constructive notice of the Settlements via the Court's electronic docket, such notice should not preclude a finding of excusable neglect. It was understandable for NCUA's counsel to rely on NCUA's established process for processing settlement notices, as it had for prior class-action settlements potentially affecting NCUA. Moreover, excusable neglect applies even in situations like this one where an omission was "caused by circumstances within the movant's control," *Morris*, 928 F. Supp. 2d at 809.

*Second*, there is no prejudice in allowing NCUA to opt out. Tellingly, Settling Defendants' pre-motion letter did not even attempt to identify any prejudice. *See* ECF No. 2779. Nor could they. Prejudice in this context means some affirmative injury to the non-movant, such as causing the loss of evidence or increased difficulties in conducting discovery, or precipitating a flood of similarly late-filed opt-outs. *See*, *e.g.*, *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). The only effect of granting NCUA's request would be to allow NCUA to continue to litigate the claims that it is already litigating. Because this effect exists for *every* request to extend the time to opt-out of a class action, it is not cognizable prejudice. *See In re Processed Egg Products Antitrust Litig.*, 130 F. Supp. 3d 945, 954 (E.D. Pa. 2015) ("In the context of excusable neglect, when the claimed prejudice is, in reality, the loss of a windfall rather than an affirmative injury to the non-movant, there is no real prejudice to the non-movant. As a result, to find prejudice, courts typically require more than the fact that the defendant will face an additional lawsuit." (citations omitted)).

*Third*, NCUA promptly contacted the claims administrator five business days after learning from Barclays that a formal opt-out had not been submitted and both (a) explained the

reasons for NCUA's delay; and (b) made clear NCUA's intention not to participate in the Settlements.  That communication was then forwarded to defense counsel and class counsel.  NCUA's pre-motion letter followed two days after defense counsel communicated their clients' position that they would oppose the relief NCUA seeks.[8]  *See* Ex. 4 (Dec. 18, 2018, Email from E. Sacksteder to M. Huppert).  Such a delay was reasonable in the circumstances and compares favorably to other, longer delays that have been held to support a finding of excusable neglect.  *See Four Seasons*, 493 F.2d at 1290 (exclusion permitted where party filed motion over two months after learning of deadline); *Morris*, 928 F. Supp. 2d at 807-08 (excusable neglect found where untimely notice of exclusion filed three months after opt-out deadline and nine months after party voiced opposition to settlement); *In re Del-Val Fin. Corp. Sec. Litig.*, 154 F.R.D. 95, 96 (S.D.N.Y. 1994) (excusable neglect found where motion filed three months after class member received late notice of settlement).  Moreover, granting this motion will have no impact on judicial proceedings or discovery; it will just allow NCUA to continue to pursue claims that are already pending.

*Fourth*, the Defendants "can claim neither bad faith nor surprise at [NCUA's] request to opt out," *Morris*, 928 F. Supp. 2d at 809, given that NCUA had already filed individual claims, is actively litigating them, and has provided no indication of any intent to abandon them.  *See* ECF 2544; (June 15, 2018) (motion to amend complaint).  This is "certainly evidence of an intent to pursue its remedies independently, rather than as part of the class." *Brand Name Prescription Drugs*, 171 F.R.D. at 216.  NCUA was not sitting back, "waiting to see if the adjudication is favorable before deciding whether to join the class." *Id*.; *accord Four Seasons*, 493 F.2d at 1290

---

[8] Given the inadvertence of the delay, it was reasonable for NCUA to seek Settling Defendants' agreement not to bind NCUA to the Settlements before burdening the Court with motions practice on the issue.

("There is no indication that the tardiness was part of a strategy designed to gain a tactical advantage."). Indeed, NCUA never submitted any claim in these Settlements, nor did it ever contemplate doing so. Thus, as the claims administrator has made clear, NCUA is not participating in the Settlements in any way, nor is it collecting any amounts from these Settlements.

## CONCLUSION

For the foregoing reasons, the Court should grant NCUA's motion to be excluded from the Settlements and the Litigation Class.

Dated: March 4, 2019

George A. Zelcs
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, Illinois 60601
Phone: (312) 641-9760
Fax: (312) 641-9751

Stephen M. Tillery
Robert L. King
Diane E. Moore
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, Missouri 63101-1625
Phone: (314) 241-4844
Fax: (314) 241-3525

Norman E. Siegel (D. Kan. # 70354)
Rachel E. Schwartz (Kan. # 21782)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Phone: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

<u>Of Counsel</u>:
Michael J. McKenna, General Counsel
NATIONAL CREDIT UNION
  ADMINISTRATION
1775 Duke Street
Alexandria, Virginia 22314

NATIONAL CREDIT UNION
ADMINISTRATION BOARD,
as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union


By:   <u>/s/   Andrew C. Shen</u>

David C. Frederick
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999